No. 12-6056

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

ALPHONSO MYERS,

Appellant/Plaintiff,

vs.

KNIGHT PROTECTIVE SERVICE, INC., and
WILLIAM THOMSPON, an individual
Appellees/Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
Case No. CIV-10-866-C
HONORABLE ROBIN S. CAUTHRON, DISTRICT JUDGE

### APPELLANT'S OPENING BRIEF

Respectfully submitted,

**Scott F. Brockman**                    **Ken Feagins, Of Counsel**
WARD/GLASS                               WINNINGHAM & STEIN
1821 E. Imhoff Road, Suite 102           2200 NW 50th, Suite 240
Norman, OK 73071                         Oklahoma City, OK 73112-8044
(405) 360-9700                           (405) 843-1037
scott@wardglasslaw.com                   ken@americanvisas.com

ATTORNEYS FOR APPELLANT
SCANNED PDF FORMAT ATTACHMENTS ARE INCLUDED

May 19, 2014

Oral Argument is requested

No. 12-6056

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

ALPHONSO MYERS,

Appellant/Plaintiff,

vs.

KNIGHT PROTECTIVE SERVICE, INC., and
WILLIAM THOMSPON, an individual
Appellees/Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
Case No. CIV-10-866-C
HONORABLE ROBIN S. CAUTHRON, DISTRICT JUDGE

## APPELLANT'S OPENING BRIEF

Respectfully submitted,

**Scott F. Brockman**                     **Ken Feagins, Of Counsel**
WARD/GLASS                                WINNINGHAM & STEIN
1821 E. Imhoff Road, Suite 102            2200 NW 50th, Suite 240
Norman, OK 73071                          Oklahoma City, OK 73112-8044
(405) 360-9700                            (405) 843-1037
scott@wardglasslaw.com                    ken@americanvisas.com

ATTORNEYS FOR APPELLANT
SCANNED PDF FORMAT ATTACHMENTS ARE INCLUDED

May 19, 2014

Oral Argument is requested

## TABLE OF CONTENTS

**PAGE(S)**

**TABLE OF AUTHORITIES** .................................................................. iv-ix

**PRIOR OR RELATED APPEALS** ......................................................... ix

**JURISDICTIONAL STATEMENT** .................................................... 1-2

**STATEMENT OF ISSUES** ................................................................. 2

**STATEMENT OF FACTS** .................................................................. 3-6

**SUMMARY OF ARGUMENT** ......................................................... 7-10

**ARGUMENTS** .............................................................................. 11-35

**PROPOSITION I**
**REVIEW IS *DE NOVO***.......................................................... 11-13

**PROPOSITION II**
**MYERS PRESENTED SUFFICIENT EVIDENCE TO**
**ESTABLISH A FACTUAL CONTROVERSY REGARDING**
**HIS RACE AND DISABILITY CLAIMS, AND SUMMARY**
**JUDGMENT SHOULD HAVE BEEN DENIED** ..................................... 13-29

    A.    Prima Facie case for race discrimination ........................... 14-16

    B.    Prima Facie case for disability discrimination ................... 16-21

    C.    The law on establishing pretext ....................................... 21-26

    D.    The evidence to prove pretext ......................................... 26-29

ii

**PROPOSITION III**
**GENUINE ISSUSES OF MATERIAL FACT REMAIN AS TO**
**WHETHER KPS IS LIABLE FOR THE MISCONDUCT OF THOMPSON**
**PURSUANT TO THE *CAT'S PAW* THEORY OF LIABILITY** ................ 29-32

**PROPOSITION IV**
**THERE ARE SUFFICIENT FACTS TO CREATE A QUESTION OF**
**FACT ON APPELLANT'S TORTIOUS INTERFERENCE CLAIM** ..........33-35

**CONCLUSION** ............................................................................... 36

**CERTIFICATE OF COMPLIANCE** ..................................................... 37

**CERTIFICATE OF COMPLIANCE**
**FOR DIGITAL SUBMISSIONS** .......................................................... 37

**CERTIFICATE OF SERVICE** .............................................................. 37

## TABLE OF AUTHORITIES

<u>**Cases**</u>                                                                    <u>**Page**</u>

*Aka v. Washington Hosp. Ctr.*,
   156 F.3d 1284 (D.C.Cir.1998) ............................................................... 25

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) .................................................................... 12, 25

*Antonio v. Sygma Network, Inc.*,
   458 F.3d 1177 (10th Cir.2006).............................................................. 22

*Baker v. State Ins. Fund*,
   2001 OK 94, 40 P .3d 463.................................................................... 34

*Brown v. State Farm Fire & Cas. Co.*,
   2002 OK CIV APP 107, 58 P.3d 217....................................................... 33

*Carswell v. Oklahoma State Univ.*,
   1999 OK 102, 995 P.2d 1118 ............................................................... 34

*Cleveland v. Policy Management Systems Corp.*,
   526 U.S. 795, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999) ........................................ 18

*Cone v. Longmont United Hospital Ass'n,*
   14 F.3d 536 (10th Cir.1994) ................................................................ 21

*Conner v. Schnuck Markets, Inc.*,
   121 F.3d 1390 (10th Cir. 1997) ............................................................ 13

*Conroy v. Vilsack*,
   707 F.3d 1163 (10th Cir. 2013)............................................................. 25

*Conway v. Electro Switch Corp* ,
   825 F.2d 593 (1st Cir. 1987) ............................................................. 26

*Doebele v. Sprint/United Mgmt. Co.*,
   342 F.3d 1117 (10th Cir. 2003) ................................................... 15, 27

*EEOC v BCI Coca-Cola Bottling Co.*,
   450 F.3d 476 (10th Cir. 2006) ............................................................ 8

*EEOC v. Ackerman*,
   956 F.2d 944 (10th Cir. 1992) ......................................................... 21

*EEOC v. Flasher Co., Inc.*,
   986 F.2d 1312 (10th Cir. 1992) ....................................................... 14

*Ennis v. National Ass'n of Bus. & Educ. Radio, Inc.*,
   53 F.3d 55 (4th Cir.1995) ................................................................ 17

*Exxon Co. U.S.A. v. Sofec, Inc.*,
   517 U.S. 830 ..................................................................................... 31

*Feldman v. Am. Mem'l Life Ins. Co.*,
   196 F.3d 783 (7th Cir. 1999) ...................................................... 19, 20

*Furnco Constr. Corp. v. Waters*,
   438 U.S. 567 (1978) ................................................................... 14, 23

*Helm v. Kansas*,
   656 F.3d 1277 (10th Cir. 2011) ....................................................... 11

*Hemi Group, LLC v. City of New York*,
   559 U.S. 1 .......................................................................................... 31

*Jaramillo v. Colo. Judicial Dep't*,
   427 F.3d 1303 ................................................................................................ 25

*Johnson v. Weld Cnty., Colo.*,
   594 F3d 1202 (10th Cir. 2010) ......................................................................... 12

*Kendrick v. Penske Trans. Servs., Inc.*,
   220 F.3d 1220 (10th Cir. 2000) ........................................................................ 27

*Lusk v. Ryder Integrated Logistics*,
   238 F.3d 1237 (10th Cir. 2001) ........................................................................ 20

*Martin v. Johnson*,
   1998 OK 127, 975 P .2d 889 ....................................................................... 33, 34

*Mason v. Oklahoma Turnpike Auth.*,
   ,115 F.3d 1442 (10th Cir. 1997) ....................................................................... 33

*McDonnell Douglas Corp. v. Green*,
   411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 668 (1973) ......................................... 7, 14

*McKenzie v. Dovala*,
   242 F.3d 967 (10th Cir. 2001) .................................................................... 11, 12

*McKnight v. Kimberly Clark Corp.*,
   149 F.3d 1125 (10th Cir. 1998) ........................................................................ 21

*Miller v. Eby Realty Group LLC*,
   396 F.3d 1105 (10th Cir.2005) ................................................................... 24, 26

*Morgan v. Hilti, Inc.*,
   108 F.3d 1319 (10th Cir.  1997) .................................................................... 9, 17

*Murray v. City of Sapulpa*,
   45 F.3d 1417 (10th Cir. 1995) .......................................................................... 22

*Mustain v. Grand River Dam Auth.*,
   2003 OK 43, 68 P.3d 991 ................................................................................. 34

*Perry v. Woodward*,
   199 F.3d 1126 (10th Cir. 1999) ........................................................................ 12

*Randle v. City of Aurora*,
   69 F.3d 441 (10th Cir. 1995) ................................................................. 13, 22, 25

*Rascon v. U.S. West*,
   Commun., 143 F.3d 1324 ................................................................................. 18

*Reeves v. Sanderson Plumbing Prods., Inc.*,
   530 U.S. 133, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000).............................. passim

*Riggs v. AirTran Airways, Inc.*,
   497 F.3d 1108 (10th Cir.2007)........................................................................ 14

*Setliff v. Memorial Hosp. of Sheridan County*,
   850 F.2d 1384 (10th Cir.1988) ........................................................................ 22

*Simms v. Oklahoma*,
   165 F.3d 1321 (10th Cir. 1999), ....................................................................... 13

*St. Mary's Honor Center v. Hicks*,
   509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)................................. 22, 23

*Staub v. Proctor Hospital*,
   131 S.Ct. 1186 (2011) ........................................................................7, 29, 30, 31

*Tabor v. Hilti, Inc.*,
   703 F.3d 1206 (10th Cir. 2013) .......................................................................... 15

*Tax & Accounting Software Corp. v. United States*,
   301 F.3d 1254 (10th Cir. 2002) .......................................................................... 11

*Teamsters v. United States*,
   431 U.S. 324 (1977) ............................................................................................ 14

*Texas Dep't of Cmty. Affairs v. Burdine*,
   450 U.S. 248 (1981) ............................................................................................ 14

*Thomas v. Int'l Bus.*,
   Machs., 48 F.3d 478 (10th Cir. 1995) ............................................................... 12

*Thornton v. Holdenville Gen. Hosp.*,
   2001 OK CN APP 133, 36 P.3d 456 .................................................................. 35

*Townsend v. Lumbermens Mut. Cas. Co.*,
   294 F.3d 1232 (10th Cir. 2002) ......................................................................... 24

*Trujillo v. University of Colo. Health Sciences Ctr.*,
   157 F.3d 1211 (10th Cir.1998) .....................................................................15, 27

*United States Postal Service v. Aikens*,
   460 U.S. 711, 103 S.Ct. 1478 , 75 L.Ed.2d 403 (1983) ....................................... 26

*White v. York Int'l Corp.*,
   45 F.3d 357 (10th Cir.1995) ............................................................................... 17

*Wilson v. City of Tulsa*,
   2004 OK CIV APP 44, 91 P .3d 673 ................................................................... 35

*Young v. Dillon Cos., Inc.*,
   468 F.3d 1243 (10th Cir.2006) ....................................................................24

## Statutes

28 U.S.C § 1291..........................................................................................2

28 U.S.C. § 1331..........................................................................................1

42 U.S.C. §§ 12101, et seq. .........................................................................2

42 U.S.C. § 12112(a).................................................................................16

42 U.S.C. §§ 2000e, et seq., .......................................................................1

## Rules

Fed. R. Civ. P. 56 .....................................................................................12

Rule 32(a)(7)(B), F.R.A.P ........................................................................ 37

Rule 4(a)(1)(A), F.R.A.P ...........................................................................2

## Regulations

20 C.F.R. § 404.1520(d).............................................................................19

20 C.F.R. § 404.1525(a) ............................................................................19

## PRIOR OR RELATED APPEALS

There are no prior or related appeals.

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

| | | |
|---|---|---|
| ALPHONSO MYERS, | ) | |
| | ) | |
| Appellant/Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 12-6056 |
| | ) | |
| KNIGHT PROTECTIVE SERVICE, INC., and | ) | |
| WILLIAM THOMPSON, an individual, | ) | |
| | ) | |
| Appellees/Defendants. | ) | |

## APPELLANT'S OPENING BRIEF

Appellant/Plaintiff Alphonso Myers ("Myers") submits the following opening brief in the above-referenced case against Appellees/Defendants Knight Protective Service, Inc. ("KPS") and William Thompson ("Thompson") and respectfully requests that this Court reverse the trial court's Order granting summary judgment in favor of Defendants, dated January 17, 2012, attached hereto as Exhibit "1". In support of the appeal, Myers further states as follows:

## JURISDICTIONAL STATEMENT

The district court had original jurisdiction of the action below pursuant to 28 U.S.C. § 1331. This action is founded on the existence of a federal question arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq.,

and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, et seq.
Myers brought federal claims for race discrimination and disability
discrimination, as well as a claim for tortious interference under Oklahoma state
law. [Aplt. App 13-23].

On January 17, 2012, the Order on Appellees' motion for summary
judgment was entered, as was the Judgment. [Aplt. App. 786, 796]. A copy of the
Order is attached hereto pursuant to 10th Cir. R. 28.2(A)(1) as Exhibit "1". The
Order to be reviewed disposed of all claims by and against all parties. On
February 15, 2012, Notice of Appeal was timely and properly filed in accordance
with Rule 4(a)(1)(A), F.R.A.P. [Aplt. App. 797] This appellate court's jurisdiction
derives from 28 U.S.C § 1291.

## STATEMENT OF ISSUES

The issue on appeal is whether there are sufficient facts surrounding
Myers' leave from employment to prove a question of fact as to whether he was
terminated because of his race or disability. Another issue before the Court is
whether there is a sufficient controversy of fact to create a question of fact as to
whether Thompson acted willfully and against the interests of his employer in
forcing Myers from his employment.

## STATEMENT OF FACTS

Myers worked as an armed security guard with KPS starting in June 2009. At the time he was interviewed for the position, Myers informed Captain Mike Strider ("Strider") that Myers had issues with his neck and pain and that he was on a 10-pound weight limit. Strider asked Myers if he could observe and report, and Myers responded affirmatively. He then explained to Myers that he would have to pass all tests and the background check, but that if he did so, he could have the job with those duties. [Aplt. App. 443-44, 470-71]. After Strider's comments, Myers understood that the essential functions of the job were observing and reporting, although there were other functions that were listed in the job description. [Aplt. App. 471-72]. Based upon that understanding, Myers answered the medical examination questions truthfully that there was nothing that would interfere with his performance. [Aplt. App. 474-75]. For the evaluation, Myers was able to perform each task that he was asked to perform. [Aplt. App. 475-78].

Myers was performing his work satisfactorily and was never advised that he was not doing his job. [Aplt. App. 488]. Thompson never informed Strider that Myers could not perform his job. [Aplt. App. 501]. According to the

documentation completed by KPS's own agents or employees, Myers could perform the essential security job functions without any limitations. [Aplt. App. 500].

On October 9, 2009, Myers had finished his work and was closing the building down when he felt some pain after walking multiple flights of stairs, and rubbed his neck.  Thompson saw him and asked if he was okay to which Myers responded that he had some pain, but that he would be okay.  Thompson, however, advised Myers to take a second physical and that told Myers he could not work until he did so.  [Aplt. App. 439-42].   On that same day, Thompson filed an "Incident Report" regarding Myers' pain. [Aplt. App. 535].  Captain Strider testified that the incident report Thompson filed regarding Myers' pain was unusual.  [Aplt. App. 504, 516].  And, although Strider would have more than likely contacted Thompson upon receiving the incident report related to Myers' pain, he did not do so in this matter.  [Aplt. App. 504].  Strider was unaware of any other circumstances where an Incident Report was submitted based upon someone's alleged pain on the job.  [Aplt. App. 519].  Ultimately, Thompson had the authority to send Myers home for a reason if he so chose, but not the authority to terminate.  [Aplt. App. 519].

Pursuant to Thompson's instructions, Myers turned in his keys and supplies and waited to hear from Thompson about a second physical so he could return to work.   However, Myers never heard from Thompson until December 2009, months later, when Thompson informed Myers that the company was changing from .38 revolvers to .40 caliber automatics, and that as a result, Myers would have to take the new gun test.  In response, Myers enrolled and was scheduled to take the new gun test on December 23rd.  However, on the date Myers was scheduled to take the test, it was cancelled due to inclement weather. The next thing Myers heard was that he was to bring his uniform and license to the Federal building, and he was terminated soon thereafter.  [Aplt. App. 442-43].

Although Thompson indicated that Myers would have to take a second physical, due in part to a decision by Captain Strider, Strider testified that, because he passed the first physical, there was no need to take a second one, and Strider never informed Myers that he had to take a second physical.  [Aplt. App. 500].  Strider further informed Myers that he never told Thompson that Myers had to take a second physical in order to return to the workplace.  [Aplt. App. 446-47].  Strider also testified that Thompson never indicated to him in any way that Myers needed to take a second physical.  [Aplt. App. 500].

5

Moreover, Thompson wrote a letter on behalf of Myers and indicated that he had consulted with Strider about writing the letter.  However, Strider knew nothing about the letter.  [Aplt. App. 461-63, 506].  The letter also falsely claims that Myers and Thompson mutually agreed that it was best for Myers to resign.  [Aplt. App 543].  Strider testified that the next thing he heard about Myers, after being informed that Myers experienced some pain on the job, was Thompson telling him that Myers had resigned his position.  [Aplt. App. 501-02, 506] Thompson told Strider that Myers quit when, in fact, Myers never indicated that he wanted to quit his job.  [Aplt. App. 491].

Additionally, during the time he was working, Myers was supposed to get to work 36 hours a week, but his schedule was cut short since he was not getting the hours he was supposed to.  When there were calls for jobs, Myers was being passed over in favor of a Caucasian employee by the name of Handley.  [Aplt. App. 445-46].

Myers filed suit alleging claims for race and disability discrimination in August 2010.  He also brought claims against Thompson individually for tortious interference.  [Aplt. App. 18, 19, 21].

## SUMMARY OF ARGUMENT

In granting summary judgment in favor of the defendants, the district court evaluated the evidence under an erroneous view of the applicable summary judgment law governing employment discrimination cases based upon circumstantial evidence and the burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 668 (1973) as applied in *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000) and *Staub v. Proctor Hospital*, 131 S.Ct. 1186 (2011). The district failed to cite to *Reeves* and *Staub* and did not evaluate the evidence under either holding. Rather, the district court inappropriately weighed the evidence, failed to view the record most favorably to Mr. Myers, failed to draw reasonable inferences in Mr. Myers' favor from the circumstantial evidence presented, and did not address Mr. Myers' "cat's paw"/subordinate bias liability claim.

The district court stated in footnotes 1 and 2 in relevant part:

**Footnote 1** - "Although Plaintiff references Defendant Thompson's actions, this language is found in his response brief to Defendant KPS. Nowhere in that response brief does Plaintiff reference actions by KPS which would serve a basis for the claims brought against the Defendant [i.e., KPS]. Rather, Plaintiff's focus is solely on the alleged misdeeds of Defendant Thompson."

7

**Footnote 2 –** The Court notes that Plaintiff has offered more specific record citations in his supplemental brief. *However, even review of those portions of the record offer no meaningful support for Plaintiff's claims.* (Emphasis added.)

[Aplt. App. at 789-90]

A reasonable jury might conclude under *Staub* and *EEOC v BCI Coca-Cola Bottling Co.*, 450 F.3d 476 (10th Cir. 2006) that KPS is liable under Title VII for racial discrimination because Thompson was a subordinate who lacked the decision-making power to terminate Mr. Myers, but who used KPS's Strider as a dupe in a deliberate scheme to terminate Mr. Myers. As a result of the district court's misapplication of the applicable law to the evidence in the record, the court inappropriately assumed the role of the fact-finder. The district court granted summary judgment in favor of the defendants by ruling Myers failed to establish the second and third elements of a prima facie case of racial discrimination. By doing so, the district court preempted a jury from deciding the pretext prong of the *McDonnell Douglas* burden-shifting analysis, the ultimate fact issue in employment discrimination cases and in this appeal.

By improperly weighing the evidence in the record and failing to give Mr. Myers inferences in his favor, the district court placed an onerous burden on

Myers at the *prima facie stage* of the *McDonnell Douglas* burden-shifting analysis,

contrary to well-settled law.

Moreover, the district court stated:

"Even were the Court to accept Plaintiff's arguments and determine
that he had satisfied his prima facie case, Defendant [KPS] has
proffered a legitimate, non-discriminatory reason for his
unemployment. That is that Plaintiff never satisfied the
requirements to return to work or, alternatively, that Plaintiff
resigned from his employment. Plaintiff has failed to come forward
with any evidence from which a reasonable jury could find that that
[sic] reason was a *pretextual* basis to cover up the fact that
Defendant KPS discriminated against him." (Emphasis added.)

[Aplt. App. at 791].

This Court should disregard all evidence in favor of KPS and Mr.

Thompson, give credence to the evidence presented by Mr. Myers, and do so

without weighing the evidence. This is especially important in applying the

applicable law for pretext to this case. At the summary judgment stage, *all*

*doubts regarding pretext* must be resolved *in Myers' favor*. *See Morgan v. Hilti,*

*Inc.,* 108 F.3d 1319 (10th Cir. 1997).

Myers essentially contends that there is a question of fact regarding a few

issues. First, there is sufficient evidence to suggest that Myers surpassed his

prima facie case for race discrimination because his job assignments were given

to other Caucasian employees (Page 15).  And, there is adequate explanation regarding any apparent conflict with the SSA proceedings to allow Myers' disability claim to go forward, since he was performing the essential functions of the job even with his lifting restriction.  (Page 17).

Moreover, there are questions of fact regarding pretext, principally surround the circumstances in which Myers was placed on leave and never allowed to return, and in Thompson informing Strider, untruthfully, that Myers had quit.  (Page 26)  Finally, regarding the claims against KPS, there are sufficient facts supporting a cat's paw claim based upon Thompson's wrongful actions. (Page 29).

For the claim against Thompson individually, Oklahoma law makes it clear that a tortious interference claim will lie when another employee acts willfully and intentionally against the interests of the employer in taking action against a co-employee.  (Page 33).  Here, the evidence in the record supports Myers' claim that Thompson acted intentionally and willfully in placing Myers on leave and in lying about an alleged resignation in order to force Myers off the job.  (Page 35).

## ARGUMENT

## PROPOSITION I

## REVIEW IS *DE NOVO*

Review of the district court's grant of summary judgment by this court is de novo, applying the same legal standard used by the district court. *McKenzie v. Dovala*, 242 F.3d 967 (10th Cir. 2001). This Court, therefore, should review the issue stated herein de novo, because it was decided by the district court in the context of a motion for summary judgment. *See Tax & Accounting Software Corp. v. United States*, 301 F.3d 1254, 1257 (10th Cir. 2002) (discussing standard of review applicable to district court decisions granting or denying motions for summary judgment).

This Court reviews a district court's grant of summary judgment de novo, "applying the same standard as the district court." *Helm v. Kansas*, 656 F.3d 1277, 1284 (10th Cir. 2011). This Court reviews the summary judgment evidence in the light most favorable to Mr. Myers, the non-moving party. *Id.* "[W]e will affirm the district court's disposition only if our *independent review of the record*, viewing the facts in the light most favorable to [the nonmoving party], reveals that there is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law." *Johnson v. Weld Cnty., Colo.*, 594 F3d 1202, 1207 (10th Cir. 2010)(citing Fed. R. Civ. P. 56)(Emphasis added).

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P.56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

In determining whether a genuine issue of material fact exists, the reviewing court must construe the factual record and all reasonable inferences therefrom in the light most favorable to the nonmoving party.  *Thomas v. Int'l Bus. Machs.*, 48 F.3d 478 (10th Cir. 1995); *Perry v. Woodward*, 199 F.3d 1126 (10th Cir. 1999); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).  **The nonmovant is given wide berth to prove that a factual controversy exists**.  *McKenzie v. Dovala*, 242 F.3d 967 (10th Cir. 2001).

In *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 2110 (2000) the Supreme Court made it clear that a court must disregard all evidence favorable to the moving party and give credence to the evidence favoring the nonmovant.  Therefore, Myers' version of the disputed facts is

assumed to be correct. *Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1392 n.2 (10th Cir. 1997). In other words, the evidence of the party opposing summary judgment is to be believed and all justifiable inferences are to be drawn in the light most favorable to that party. *Reeves*, 120 S.Ct. at 2101; *Simms v. Oklahoma*, 165 F.3d 1321 (10th Cir. 1999), *cert. denied*, 120 S.Ct. 53 (1999).

Finally, summary judgment is inappropriate when the evidence presented by the parties is susceptible of different interpretations or inferences by the trier of fact. *Randle v. City of Aurora*, 69 F.3d 441, 453 (10th Cir. 1995). "[A]t the summary judgment stage the judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Id.* at 453. Myers contends that the trial court failed to follow several of these edicts and once this Court reviews the facts de novo, it will find that the granting of summary judgment was improper.

**PROPOSITION II**

**MYERS PRESENTED SUFFICIENT EVIDENCE TO ESTABLISH
A FACTUAL CONTROVERSY REGARDING HIS RACE AND DISABILITY
<u>CLAIMS, AND SUMMARY JUDGMENT SHOULD HAVE BEEN DENIED</u>**

For both his race and disability claims, this Court should apply the *McDonnell Douglas* burden-shifting analysis applicable to Title VII claims. *See,*

*e.g., Riggs v. AirTran Airways, Inc*., 497 F.3d 1108, 1114-15 (10th Cir.2007). According to that analysis, Myers has the burden of establishing a prima facie case of employment discrimination based on his race and disability; if he does so, KPS must articulate a legitimate, non-discriminatory reason for its actions and, if they do so, Myers then has the burden of proving that such reason was a mere pretext for discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. at 802-04.

**A.    Prima Facie case for race discrimination**

As this Court knows, a plaintiff's burden to establish a prima facie case under Title VII is "not onerous."  *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). Only a small amount of evidence is required. *See EEOC v. Flasher Co., Inc.*, 986 F.2d 1312, 1318 (10th Cir. 1992).  The precise requirements of a prima facie case can vary depending on the *context*. They were "never intended to be rigid, mechanical, or ritualistic." *Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 577 (1978). *See Teamsters v. United States,* 431 U.S. 324, 358 (1977); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 n.13 (1973).

The trial court erred when it determined that in order to establish a prima facie case of employment discrimination on the basis of race, Myers had to show similarly situated employees were treated differently. The trial court stated,

14

"Thus, Plaintiff has failed to demonstrate that he was treated differently than other employees based on his race and has failed to satisfy the third prong of the prima facie case." This is not the standard.  *See Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1137 (10th Cir. 2003).  (*holding* "We first point out the court erred in ruling that a plaintiff must show she was treated differently from other similarly situated employees to survive summary judgment."). *But see Trujillo v. University of Colo. Health Sciences Ctr.*, 157 F.3d 1211, 1212 (10th Cir.1998).

In order to prove a prima facie case of racial discrimination, Myers must show that (1) he is a member of a protected class; (2) who suffered an adverse employment action; and (3) such adverse action occurred in circumstances giving rise to an inference of discrimination. *See Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1216 (10th Cir. 2013).  Myers contends that the record supports sufficient facts to meet all these elements, notwithstanding any comparison to other employees.

Even if this Court employs the *Trujillo* standard, Myers clearly surpasses the first element.  He further contends that the evidence supports passage of the second element since there is a dispute of fact regarding Myers' termination.  As explained above, Myers testified that he did not quit, but that he was placed off work and never allowed to return.  Moreover, Myers testified that certain work

assignments to which he was entitled were given to other employees. These would be examples of adverse employment actions.

The trial court states that Myers cannot prove the third element for a prima facie case for race discrimination, but the record actually supports sufficient facts to surpass this portion of the claim. Myers testifies that white males were given the work assignments that should have been given to Myers. [Aplt. App. 489]. Additionally, there are no facts that white employees were also placed off work and never allowed to return, like Myers was in this case. This Court should reverse the district court and find that Myers has surpassed the prima facie case.

**B.     Prima Facie case for disability discrimination.**

The ADA prohibits an employer from discriminating "against a qualified individual with a disability because of the disability of such individual in regard to ...discharge of employees...and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To establish a prima facie case under the ADA, a plaintiff must demonstrate: (1) that she is a disabled person within the meaning of the ADA; (2) that he is qualified, that is, he is able to perform the essential functions of the job, with or without reasonable accommodation; and (3) that the employer terminated her employment under circumstances which

give rise to an inference that the termination was based on her disability. S*ee White v. York Int'l Corp.* 45 F.3d 357, 361 n. 6 (10th Cir.1995).

The final prong of the test requires the plaintiff to present some affirmative evidence that disability was a determining factor in the employer's decision. *See Ennis v. National Ass'n of Bus. & Educ. Radio, Inc.,* 53 F.3d 55, 59 (4th Cir.1995). The plaintiff must present evidence that, if the trier of fact finds it credible, and the employer remains silent, she would be entitled to judgment as a matter of law. *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323-24 (10th Cir. 1997).

It appears that the trial court found that Myers could not prove the second element of his prima facie case, showing that he could perform the essential functions of the job, with or without reasonable accommodations. The trial court does concede that Myers testified he could perform the essential job functions of his position, the record supports this, and it does not appear that KPS has presented evidence to the contrary. The trial court focused on the testimony before the Social Security Administration ("SSA") where Myers said that he was unable to engage in meaningful employment, but the facts are not as clear as what the trial court would make them appear.

The SSA judge knew that Myers worked with KPS in 2009, so there are no facts that Myers tried to hide his employment with KPS. Moreover, although the judge indicated that Myers left due to his impairment, Myers testified that he did not tell the SSA judge that he left due to his impairment. [Aplt. App. at 110]. This creates a question of fact sufficient for Myers to surpass summary judgment regarding any conflict between his testimony in this matter and the proceedings before SSA.

As explained by the Supreme Court in *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795, 119 S.Ct. 1597, 1603, 143 L.Ed.2d 966 (1999), the mere act of applying for SSDI should not estop a plaintiff from making a subsequent ADA claim. This is so, according to the Tenth Circuit, because the standards for being "disabled" differ between the SSA and the ADA:

> The Social Security Act, on the other hand, does not take into consideration whether an accommodation would render the individual able to perform a job. Therefore, a statement that a person is disabled for purposes of obtaining social security disability benefits—a determination made without regard to accommodation—is not necessarily inconsistent with a statement that a person has been discriminated against in the workplace on the basis of her disability—a determination made only after giving due regard to accommodation.

*Rascon v. U.S. West Commun.*, 143 F.3d 1324, 1330–31 (10th Cir.1998).

Moreover, the ADA and SSA/SSDI require different inquiries into an individual's disability.  As the *Feldman* Court stated:

> SSDI provides a welfare safety net for those who are unable to work, regardless of employers' willingness to accommodate their disabilities, whereas the ADA serves a remedial purpose in opening work opportunities for the disabled by forcing employers to accommodate employees' disabilities so long as that does not impose an undue burden. The ADA only protects the disabled who can work with or without reasonable accommodation while SSDI does not consider reasonable accommodation at all in defining disability. Thus, an individual might be able to work with reasonable accommodation and therefore be a "qualified individual" under the ADA, but be unable to work without reasonable accommodation and thus "totally disabled" under SSDI as well.
>
> Second, SSDI utilizes broad administrative definitions designed to process masses of claimants with only a general inquiry into each applicant's individual situation. The SSA categorically considers certain conditions to be disabilities without consideration of the individual's actual level of impairment. *See* 20 C.F.R. §§ 404.1520(d), 404.1525(a). In contrast, the ADA delves into the facts of each plaintiff's case within a litigation context to determine whether the plaintiff was unable to perform her particular job with or without reasonable accommodations for her condition. An individual might have a condition that the SSA considers categorically disabling, but be able to perform her job with or without reasonable accommodation because her condition is not terribly severe or disabling in fact.

*Feldman v. Am. Mem'l Life Ins. Co.,* 196 F.3d 783, 790-91 (7th Cir. 1999).

When Myers explained the circumstances regarding the job he accepted and what the job would entail, it effectively showed a "sufficient explanation"

about the apparent contradiction between the testimony here and the findings of the SSA.  The record shows that the job for which Myers was hired was not onerous or physically demanding, and therefore, his 10 pound restriction, the basis for his claim for disability, was irrelevant.  Myers was informed that the job would simply involve him observing and reporting, and that these were the essential functions of the position.  [Aplt. App. at 443-44, 470-72, 474-78].  Therefore, he was informed that if he could pass the necessary tests and physical based upon these functions, then he could have the job, and this is exactly what he did.  [Id.].

So, whether Myers' job already consisted of these tasks or whether Strider made these accommodations for Myers prior to him even taking the position, the facts make it clear that Myers could do the job for which he was hired, even with his physical limitations.  The record is clear that Myers had been performing his job tasks satisfactorily until Thompson regarded Myers' outward sign of discomfort as him being unable to do anything.  See *Lusk v. Ryder Integrated Logistics*, 238 F.3d 1237, 1242 (10th Cir. 2001) ("regarded as" claim needs evidence that Defendant "misperceived the extent of Plaintiff's limitation;" perception of Plaintiff cannot be based on speculation, stereotype or myth).

Therefore, notwithstanding the SSA proceedings and the differing standards of "disability," Myers has shown that he could perform the specific job duties he was assigned, and that KPS, through Thompson, regarded Myers as being more disabled than he was so that he was mistakenly perceived as being unable to perform the job he had already been performing. Therefore, he has surpassed his prima facie case for disability discrimination.

## C.     The law on establishing pretext.

Once a non-discriminatory reason has been advanced, Myers must then offer evidence sufficient to create a genuine issue of material fact with regard to whether the articulated reason for the adverse employment decision is pretextual. *Cone v. Longmont United Hospital Ass'n*, 14 F.3d 536, 530 (10th Cir.1994). To establish pretext, a plaintiff must show that the tendered reasons for the employment decision were not the genuine motivating reasons, but rather were disingenuous or sham reasons. See *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1129 (10th Cir. 1998).

A plaintiff may make a showing of pretext directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by

showing that the employer's preferred explanation is unworthy of credence.  See *EEOC v. Ackerman*, 956 F.2d 944, 947-948 (10th Cir. 1992).

This Court has held that pretext can be shown by "evidence of such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence **infer that the employer did not act for the asserted non-discriminatory reasons**." [Emphasis added].  *Antonio v. Sygma Network, Inc*., 458 F.3d 1177, 1183 (10th Cir.2006).

If a plaintiff makes a showing of pretext, plaintiff's claims must be decided by a jury.  See *Murray v. City of Sapulpa*, 45 F.3d 1417, 1421 (10th Cir. 1995); *Randle*, 69 F.3d at 451.  Furthermore, it has been held that **summary judgment is not ordinarily appropriate for settling issues of intent or motivation**. *Setliff v. Memorial Hosp. of Sheridan County*, 850 F.2d 1384, 1394, n. 12 (10th Cir.1988).

In *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), the Court found that it is permissible for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation, quoting *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct.

2742, 125 L.Ed.2d 407 (1993) for the proposition that "[t]he factfinder's disbelief of the reasons put forward by the defendant...may, together with the elements of the prima facie case, suffice to show intentional discrimination." *Reeves*, 530 U.S. at 147 (*quoting Hicks*, 509 U.S. at 511). Therefore, it is clear that "rejection of the defendant's proffered reasons will permit the trier of fact to infer the ultimate fact of intentional discrimination." *Id*.

Moreover, "once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision." *Reeves*, 530 U.S. at 147-48; Cf. *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978) ("[W]hen all legitimate reasons for rejecting an applicant have been eliminated as possible reasons for the employer's actions, it is more likely than not the employer, who we generally assume acts with some reason, based his decision on an impermissible consideration").

This language indicates that simply disproving the employer's reasons should be sufficient to infer a discriminatory purpose because it is the employer who is in the best position to give the "true" reason for the termination. And,

23

with its decisions in *Hicks* and *Reeves*, the United States Supreme Court cleared away a circuit split over the so-called "pretext-plus" theory which said that a jury's rejection of an employer's proffered explanation could not, by itself, suffice to show discriminatory motive. *Townsend v. Lumbermens Mut. Cas. Co.*, 294 F.3d 1232, 1240 (10th Cir. 2002).

In other words, this Court has made it clear that it does not require "pretext plus," in that a plaintiff does **not** have to demonstrate that the reason was false **and** a motive for discrimination. *Miller v. Eby Realty Group LLC*, 396 F.3d 1105, 1111 (10th Cir.2005). Ultimately, it is the question regarding the falsity of the employer's reason combined with other circumstances in the case that will permit the inference that unlawful discrimination was a motivating factor in the decision. *Id.*

In determining whether the proffered reasons were pretextual, this Court should consider the facts as they appear to the decisionmakers and consider whether they honestly believed those reasons and acted upon them in good faith. *Young v. Dillon Cos., Inc.*, 468 F.3d 1243, 1250 (10th Cir.2006). The *Reeves* Court explained it as such:

> For instance, an employer would be entitled to judgment as a matter
> of law if the record conclusively revealed some other,

> nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue ***and*** there was **abundant and <u>uncontroverted</u> independent evidence** that no discrimination had occurred. [Emphasis added].

*See Reeves*, 530 U.S. at 148, 120 S.Ct. 2097.

"The focus is on the employer's *justification* for its decision—for example, did the employer offer inconsistent reasons for its decision, or is the employer's explanation so implausible that a jury could find it unworthy of credence?" *Conroy v. Vilsack*, 707 F.3d 1163 (10th Cir. 2013) (s*ee also Jaramillo v. Colo. Judicial Dep't,* 427 F.3d 1303, 1309–10 (10th Cir.2005)).

The *Randle* Court found as follows:

> It is not the purpose of a motion for summary judgment to force the judge to conduct a "mini trial" to determine the defendant's true state of mind. So long as the plaintiff has presented evidence of pretext (by demonstrating that the defendant's proffered non-discriminatory reason is unworthy of belief) upon which a jury could infer discriminatory motive, the case should go to trial. Judgments about intent are best left for trial and are within the province of the jury.

*Randle*, 69 F.3d at 453 (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

The *Miller* Court also sanctioned language from *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1292 (D.C.Cir.1998), which stated as follows:

25

"Events have causes; if the only explanations set forth in the record have been rebutted, the jury is permitted to search for others, and may in appropriate circumstances draw an inference of discrimination." The employer is in the best position to explain its actions, and when it chooses to lie about its reasons for terminating an employee it runs the risk that "the lie will lead the jury to draw an adverse inference." This is true even when there are possible legitimate explanations for the lie..."[T]he fact that a lie could have multiple explanations, some of them well-intentioned, cannot and should not foreclose the finder of fact, after hearing witness testimony and assessing the evidence as a whole, from deciding that the real motivation for lying was not innocent, but discriminatory." [Citations omitted].

*Miller*, 396 F.3d at 1113-14.

The finder of fact should be allowed to assess whether the evidence as a whole shows that the real motivation for Myers' discharge was discriminatory.

**D.    The evidence to prove pretext.**

In most cases, there is no direct evidence of discrimination, which is why it is quite clear that a claim of discrimination need not be proven solely through direct evidence; circumstantial evidence may support an inference of discrimination. *See United States Postal Service v. Aikens* , 460 U.S. 711, 714 n.3, 103 S.Ct. 1478, 1481 n.3, 75 L.Ed.2d 403 (1983). Indeed, discrimination can often be of such a subtle, insidious character that a plaintiff may only be able to offer

circumstantial evidence to buttress his or her claim. *Conway v. Electro Switch Corp*, 825 F.2d 593, 597 (1st Cir. 1987).

Moreover, a plaintiff can present a variety of evidence in an attempt to show that defendant's stated reasons are pretextual and no particular kind is required. *See Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1137-38 (10th Cir. 2003). ("'the evidence which [a plaintiff] can present in an attempt to establish that [a defendant's] stated reasons are pretextual may take a variety of forms … . [A plaintiff] may not be forced to pursue any particular means of demonstrating that [a defendant's] stated reasons are pretextual.'") *(quoting Kendrick v. Penske Trans. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000) (citations omitted)).

Although Myers contends the record contains ample evidence he was treated differently than similarly situated white employees, the district court erred in granting summary judgment against Myers because "Plaintiff has failed to demonstrate that he was treated differently than other employees based upon his race and has failed to satisfy the third prong of the prima facie case." *See Doebele v. Sprint/United Mgmt. Co.*, 342 F3d 1117, 1137 (10th Cir 2003).

It is not unusual for there to be no direct evidence of any discriminatory animus toward Myers. However, as set forth above, such direct evidence is not

necessary. When viewed most favorably to Myers, the record provides ample evidence upon which a reasonable jury could determine KPS's proffered reasons for its adverse employment actions were pretextual.

Ultimately, there was no legitimate reason for Myers to be completely removed from his position and never asked to return without exploring if he could physically perform the job. The evidence shows that he was performing the position satisfactorily and was dealing with any pain he experienced. He had accepted the specific position offered him and passed all physicals and tests. Yet, Thompson regarded Myers as being unable to perform the essential functions of his job, relieved him of his duties, required that Myers take a second physical, and ultimately never contacted Myers to set up the second physical or return him to the workplace with any further accommodations.

Moreover, Thompson was deceitful and acted strangely in how he handled the situation. He completed an incident report when the situation did not require it and told Myers that Strider was requiring a second physical. The record, however, indicates that Strider did not require a second physical, stating that there was no need since Myers passed the first one. Then, after Myers had been waiting to be put back to work, Thompson informed Strider that Myers had

resigned or quit, when Myers never indicated that he wanted to quit or resign. So although Thompson had no authority to terminate Myers, he effectively did so by false and underhanded means by duping Strider into assuming Myers resigned or quit.

Thompson further stated that the letter he sent in January 2010 to Myers was drafted with Strider's knowledge and assistance, but Strider testified that he had no knowledge about the letter. Essentially, Thompson took deliberate actions to end Myers' employment directly, either on the basis of race discrimination or after regarding Myers as being unable to effectively work in his job. This is sufficient causation to tie Myers' disability to his termination and should serve as a sufficient question of fact regarding pretext to have this Court reverse the trial court and deny summary judgment.

## PROPOSITION III

### GENUINE ISSUES OF MATERIAL FACT REMAIN WHETHER KPS IS LIABLE FOR THE CONDUCT OF THOMPSON <u>PURSUANT TO THE CAT'S PAW THEORY OF LIABILITY</u>

In *Staub v. Proctor Hospital,* 131 S.Ct. 1186 (2011), the Court addressed the "cat's paw" issue of employer liability that had been dividing the circuits. The cat's paw theory gets its name from the 17th century fable by French poet Jean

de La Fontaine. In the fable a monkey convinces a cat to remove chestnuts from a fire. The cat complies, pulls the chestnuts out of the fire one at a time, and burns its paw in the process while the monkey feasts on the chestnuts. In the employment setting, the "cat's paw" situation is where a biased subordinate employee (usually a supervisor who lacks decision-making authority) influences a higher ranking supervisor or human resources official who does NOT have an unlawful motive, but has final decision making authority as a dupe to cause the final decision-maker to take an unknowingly discriminatory adverse employment action against the plaintiff.

The majority decision by Justice Scalia established a new standard for resolving these cases. Justice Scalia wrote, "We . . . hold that if a supervisor performs an act motivated by [unlawful] animus that is *intended* to cause an adverse action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable… ." *Staub,* 131 S.Ct. at 1194 (emphasis in original).

Under the *Staub* standard, a plaintiff must establish four elements: agency, discriminatory motive, and intent to cause the adverse action in question, and proximate cause. There is overwhelming evidence in this case regarding each

element. First, it is undisputed that Thompson lacks the final hire/fire decision-making authority held by Strider, his supervisor. Second, there is ample evidence that could lead a fact-finder to believe Thompson had discriminatory motive in handling Myers' situation because of his race and disability.  Third, there is ample evidence that could lead a fact-finder to believe Thompson possessed the intent to remove Myers from the job and later claim that Myers resigned.   As to proximate cause, the Court's opinion states:

> "[T]he exercise of judgment does not prevent the earlier agent's action . . . from being the proximate cause of the harm. Proximate cause requires only "some direct relation between the injury asserted and the injurious conduct alleged," and excluded only those "links[s] that are too remote, purely contingent, or indirect." *Hemi Group, LLC v. City of New York*, 559 U.S. 1, -- . . . (2010) . . . . We do not think that the ultimate decisionmaker's exercise of judgment automatically renders the link to the supervisors' bias "remote" or "purely contingent." The decisionmaker's exercise of judgment is *also* a proximate cause of the employment decision, but it is common for injuries to have multiple proximate causes. Nor can the ultimate decisionmaker's judgment be deemed a superseding cause of the harm. A harm can be thought "superseding" only if it is a "cause of independent origin that was not foreseeable." *Exxon Co. U.S.A. v. Sofec, Inc.*, 517 U.S. 830, 837 . . . (1996)."

131 S.Ct. at 1192 (emphasis in original). The Court's opinion points to several acts by a biased supervisor that would be examples of conduct that was a proximate

cause of an adverse action, for example a "report," or "inform[ing]" other officials about the plaintiff's asserted misconduct. Some are present in this case.

For example, Thompson sent Myers home from work instructing Myers he could not resume work until he took and passed a second physical. Thompson misled him to believe someone employed by KPS would arrange the physical on Myers' behalf. Then, Thompson completed an incident report regarding his interaction with Myers that even Strider testified was not usual. Thompson further lied to Strider by advising him Myers had resigned his employment with KPS, and he was dishonest to Myers about consulting with Strider in drafting the January 16, 2010 letter. [Aplt. App. 439-56]. Strider's deposition testimony provides additional evidence of genuine issues of material fact regarding Myers' claims. [Aplt. App. 507-08].

Additionally, Strider testified he was completely unaware of Thompson's letter until he (Strider) called Myers upon receipt of Myers' EEOC Charge alleging unlawful discharge on the basis of race and/or disability. [Aplt. App. 507-08]. Strider also testified he did not determine Plaintiff needed to take a second physical. [Aplt. App. 516]. These facts show that Thompson was misleading and wrongfully guiding Strider and KPS towards discriminatory actions against

Myers, which would create a question of fact regarding KPS' liability under the cat's paw theory.

## PROPOSITION IV

### THERE ARE SUFFICIENT FACTS TO CREATE A QUESTION OF FACT ON APPELLANT'S TORTIOUS INTERFERENCE CLAIM

Oklahoma law clearly provides that where an employee acts outside the scope of her employment or acts in a manner which is in bad faith or contrary to the interests of the employer in tampering with a third party's contracts with the employer, the employee may be held liable for tortious or intentional interference with contract or business relations.  *See, e.g., Brown v. State Farm Fire & Cas. Co.,* 2002 OK CIV APP 107, 58 P.3d 217,223 (holding that an agent or employee of a principal can be held liable for tortious interference with contract where the employee acts outside the scope of his employment); *Martin v. Johnson,* 1998 OK 127, 975 P .2d 889, 896-897 (holding that it is fundamental that an employee must act in good faith and in the interest of the employer or principal; if an employee acts in bad faith and contrary to the interests of the employer in tampering with a third party's contracts with the employer the employee may be liable for a tort claim for interference with contract). *Accord Mason v. Oklahoma Turnpike Auth.,*115 F.3d 1442 (10th Cir. 1997) (noting that

employees actions in interfering with a contract give rise to liability if the interference is motivated by dishonest intent, and is done to principally harm another).

Applying these governing and persuasive authorities it is clear that where an employee acts outside the scope of her employment or in a manner which is in bad faith or contrary to the interests of the employer in tampering with a third party's contracts with the employer, the employee may be held liable for tortious or intentional interference with contract or business relations. Such claims are exactly that Myers has alleged in this case.

Under Oklahoma law, it is clear that generally, the issue of whether an employee is working within the scope of her employment is a question of fact to be decided by a jury. *See Carswell v. Oklahoma State Univ.*, 1999 OK 102, 995 P.2d 1118, 1123. Moreover, Oklahoma law plainly provides that where an employee acts maliciously, willfully or in bad faith, [s]he is not acting within the scope of his or her employment. *See Mustain v. Grand River DamAuth.*, 2003 OK43, 68 P.3d 991,999 (noting that an employee who acts maliciously, willfully and in bad faith is not acting within the scope of his employment); *Baker v. State Ins. Fund*, 2001 OK 94, 40 P .3d 463, 467 (an employee who acts with malicious

intent cannot be said to be acting within the scope of her employment); *Martin v. Johnson*, 975 P .2d at 895 (an employee is not acting in the scope of his employment if the employee acted maliciously or in bad faith). More specifically, an employee is not acting in the scope of his employment if [s]he acts with malice or bad faith in tampering with a third party's contract with the employer. *See Wilson v. City of Tulsa,* 2004 OK CIV APP 44, 91 P .3d 673, 678.

Likewise, an employee acts with malice if his actions involve hatred, spite or ill will or the doing of a wrongful act intentionally without just cause or excuse. *See* OUJI Civ.2d No. 5.6. As with scope of employment issues, under Oklahoma law, the existence of malice is usually a question of fact to be decided by a jury. *See Thornton v. Holdenville Gen. Hosp.,* 2001 OK CN APP 133, 36 P.3d 456, 461.

The key facts to examine in this matter are Thompson's actions in comparison to Strider's. As spelled out above, Thompson seemed to be acting contrary to KPS's interests, and Strider's knowledge, yet he made great effort to falsely inform Myers that Strider was complicit with all these actions. Moreover, Thompson lied to Strider by telling Strider that Myers had quit his employment. Thompson's actions evidence malice and a specific intent to harm Myers and bring about his termination from employment. There are sufficient facts to show

Thompson's liability, and summary judgment should not have been granted in his favor on Myers' intentional interference claim.

## CONCLUSION

FOR THE REASONS SET FORTH HEREIN, Appellant/Plaintiff Alphonso Myers respectfully requests that this Court reverse the trial court's Order granting summary judgment and remand this matter for further proceedings. Dated this 19th day of May, 2014.

Respectfully Submitted,

WARD & GLASS, L.L.P.

s/Scott F. Brockman

**Scott F. Brockman, OBA#19416**
1821 E. Imhoff Rd., Suite 102
Norman, Oklahoma   73071
(405) 360-9700
scott@wardglasslaw.com

**Ken Feagins, Of Counsel, OBA#16560**
WINNINGHAM & STEIN
2200 NW 50th, Suite 240
Oklahoma City, OK 73112-8044
(405) 843-1037
ken@americanvisas.com
ATTORNEYS FOR APPELLANT

36

## STATEMENT REGARDING ORAL ARGUMENT

Appellant does desire oral argument.  There are important issues regarding the standard on summary judgment, and what a Plaintiff must show to survive summary judgment.   There is also a question of importance to be considered regarding pretext, cat's paw investigations and causation.

## CERTIFICATE OF COMPLIANCE

This brief is less than 14,000 words, specifically 7,674, uses a monospaced face and contains less than 1,300 lines of text as determined by the Word Count command executed on Microsoft Word, and therefore complies with Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure.

## CERTIFICATE OF COMPLIANCE FOR DIGITAL SUBMISSIONS

All required privacy redactions have been made, and this brief is an exact copy of the written document filed with the Clerk.  This digital submission has been scanned for viruses with the program Symantec and, according to the program, is free of viruses.

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of May, 2014, that a copy of the foregoing **APPELLANT'S OPENING BRIEF** was furnished through (ECF) electronic service and mail to the following:

Angela C. Jones
John M. Nelson                          Macon Sims, CEO/President
Park Nelson Caywood & Park     Knight Protective Service, Inc.
P.O. Box 968                            4200 Parliament Place, 1st Floor
Chickasha, OK 73023                 Lanham, MD  20706
ajones@pncj.com
jelson@pncj.com

                                              /Scott F. Brockman
                                              Scott F. Brockman